UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUMMIT INVESTMENTS II AND<br>SUMMIT INVESTMENTS V,<br><br>    Plaintiffs,<br><br>v.<br><br>SAM'S EAST, INC.<br>Serve:<br>    CT Corporation System<br>    Registered Agent<br>    4701 Cox Road, Suite 285<br>    Glen Allen, Virginia 23060<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.: 3:23CV479<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

The Plaintiffs, Summit Investments II and Summit Investments V (collectively, the "Plaintiffs" or the "Owner"), by counsel, state the following for their Complaint against Sam's East, Inc. (the "Defendant" or "Tenant").

**Parties and Jurisdiction**

1. Summit Investments II is a Tennessee general partnership. Summit Investments II's principal place of business is located at Two Centre Plaza, Clinton, Tennessee 37716. Its partners, Joseph A. Hollingsworth, Jr. and the Hollingsworth Family Irrevocable Trust dated 12/29/92, are citizens of, and domiciled in, Tennessee and no other state.

2. Summit Investments V is a Tennessee general partnership. Summit Investments V's primary place of business is located at Two Centre Plaza, Clinton, Tennessee 37716. Its partners, Joseph A. Hollingsworth, Jr. and the Hollingsworth Family Irrevocable Trust dated 12/29/92, are citizens of, and domiciled in, Tennessee and no other state.

3. Summit Investments II and Summit Investments V own, as tenants in common, real property located at SouthPoint Business Park, 6055 Quality Way, Prince George, Virginia 23875.

4. Sam's East, Inc. is an Arkansas corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.

5. Plaintiffs and Defendant entered into a Lease Agreement dated July 1, 2022 (as amended) whereby Plaintiffs would lease to Defendant real property located at SouthPoint Business Park, 6055 Quality Way, Prince George, Virginia 23875 (the "Premises"). The Premises is an industrial warehouse consisting of approximately 650,000 square feet. There is one amendment to the Lease Agreement dated July 29, 2022. The Lease Agreement and the addendum are referred to, collectively, as the "Lease." A copy of the Lease is attached hereto as <u>Exhibit A</u>.

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Plaintiffs and Defendant are citizens of different states and the amount in controversy is more than $75,000.00.

## Venue

7. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Prince George County, Virginia. In addition, a substantial part of the property that is the subject of the action is situated in Prince George County, Virginia.

## Nature of the Action

8. Defendant took possession of the Premises under the Lease in or about in July 2022. At the time, the Premises was new and had not been previously occupied.

9. Shortly after taking possession of the Premises, Defendant obtained a proposal dated July 20, 2022 from a company, TRW Enterprises, Inc. located in Tulsa, Oklahoma ("TRW"), whereby TRW offered to perform work on the interior concrete control and expansion joints (the "Floor Joints") at the Premises, for Defendant, in the amount of $630,000.00 (the "TRW Proposal"). A copy of the TRW Proposal is attached hereto as <u>Exhibit B</u>.

10. In the TRW Proposal, TRW offered to perform Floor Joints work at the Premises for Defendant using "a 2-part epoxy by sika that's actually harder than concrete."

11. Upon information and belief, Defendant accepted the TRW Proposal and directed and paid TRW to perform work at the Premises as outlined in the TRW Proposal. TRW performed the work outlined in the TRW Proposal, on behalf of Defendant, in the fall of 2022.

12. TRW performed the work for Defendant on the Floor Joints at the Premises using "a 2-part epoxy" that is "harder than concrete."

13. After TRW performed its work on behalf of Defendant at the Premises, on November 30, 2022, representatives of the Defendant engaged in internal email discussions regarding the then existing conditions of the floors at the Premises. Anthony Chastain, an employee of Defendant, stated that "[a]ll the control joints have been poured full of concrete instead of caulk. No idea why this was done unless someone was trying to cut corners on a budget as caulk would have been a significant cost on this scale vs concrete." A copy of this email is attached hereto as <u>Exhibit C</u>.

14. On December 1, 2022, Michael Jeter, an employee of Defendant, circulated an email stating "[w]ith this being a landlord site, I was asked to pulled in [sic] on this conversation. . . . My understanding is this slab is less than a year old and *the structural issues are alarming as*

3

*well as concern for increased degradation*. Is there any expectations of the landlord to address this?" (emphasis added). A copy of this email is included as part of <u>Exhibit D</u> attached hereto.

15.     Later that same day, Defendant forwarded the internal email chain to Plaintiffs asking for Plaintiffs to address the floor issues described therein. At that time, it appears these representatives of Defendant were unaware that the work referenced therein as the cause of "alarming" structural damages and cracking of the floors at the Premises was performed by/on behalf of Defendant and *not* Plaintiffs. This email chain is attached hereto as <u>Exhibit D</u>.

16.     At no time did Plaintiffs authorize Defendant to perform the work described in the TRW Proposal, or, indeed, any work on the floors or the Floor Joints at the Premises. Moreover, up until the email exchanges reflected in <u>Exhibits C and D</u>, Plaintiffs were not aware that Defendant had performed any work on the floors at the Premises.

17.     On December 2, 2022, Plaintiffs responded to the email correspondence from Defendant inquiring about the floors and explained (i) that the existing conditions were the result of work performed by Defendant and (ii) that the damage to the floors was caused by the work performed by Defendant. In addition, Plaintiffs demanded that Defendant promptly address the "alarming" structural conditions Defendant caused to floors at the Premises.

18.     Since December 2022, additional correspondence and discussions have occurred amongst representatives of Plaintiffs and Defendant regarding the work performed by Defendant on the floors at the Premises. The parties appear to agree that the work performed by Defendant was improper and caused damage to the floors at the Premises. While Defendant has performed some mitigation efforts, to date, Defendant has not presented Plaintiffs with a proposal to return the floors to their condition prior to Defendant performing improper and unapproved work on the floors at the Premises.

**Statement of Facts and Allegations**

19. This case centers on Defendant's failure to obtain the required advance approval from the Plaintiffs for work performed on the Floor Joints at the Premises. In addition, the work performed by Defendant was improper, amounting to negligent/willful misconduct, and has caused significant damage to the Plaintiffs and to the Premises.

20. The concrete floors at the Premises are six inches thick and were installed using reinforced steel fibers within the concrete. The Floor Joints are spaced approximately every fifteen feet. Photos of the Premises in its original condition are attached hereto as <u>Exhibit E</u>.

21. The 650,000 square foot Premises includes approximately 22 miles of Floor Joints.

22. Floor Joints, such as the ones at the Premises, are installed in concrete to create intended relief locations in the slab to allow for naturally occurring expansion and contraction of the concrete after it is installed.

23. By Defendant placing material that is "harder than concrete" within the Floor Joints at the Premises – the concrete floors no longer had controlled relief. As a result, the Premises and the concrete floors in the Premises have been significantly damaged because they can no longer naturally expand and contract along the desired control lines and thus have experienced failure, significant structural cracking and degradation.

24. Additionally, to install joint filling material in the Floor Joints that is "harder than concrete," the material had to be filled above the adjacent highly polished, 22 mile long, concrete floor level and was roughly ground down to floor level, leaving significant grinder marks on both sides of the filled joints approximately two feet wide, defacing the polished concrete floor

throughout the facility. Photos reflecting the conditions of the floors in the Premises after the work performed by Defendant are attached hereto as <u>Exhibit F</u>.

25.  Plaintiffs did not consent, nor agree, to the work performed by Defendant on the floors and Floor Joints at the Premises.

26.  Section 11 of the Lease provides that "(a) Tenant shall indemnify, protect, defend (including reasonable attorneys' fees) and hold harmless the Landlord, Landlord's Agents, and its and their respective directors, officers, managers, associates, employees, agents, representatives, contractors, and consultants (collectively, the "Landlord Indemnified Parties") from and against any third party claims and losses suffered by the Landlord arising from: (i) Tenant's particular use or particular manner of use of the Premises (as distinguished from use of the Premises for the Proposed Use); and (ii) any act, negligence or willful misconduct of Tenant or Tenant's Affiliates, whether occurring on the Premises or on any appurtenant areas during the Term." Defendant's work on the Floor Joints arose from Defendant's particular use or manner of the use of the Premises and does not qualify as the use of the Premises for the "Proposed Use" as defined in the Lease.

27.  Further, the work performed by Defendant on the Floor Joints was an act of negligent or willful misconduct by the Defendant which occurred on the Premises during the term of the Lease.

28.  Defendant has a current obligation during the term of the Lease to indemnify Plaintiffs for the improper and unapproved work performed by Defendant on the floors/Floor Joints at the Premises.

29.  Section 18(a) of the Lease provides "Tenant may make any alterations, improvements, or additions to the Premises (each, a "<u>Tenant Change</u>", and collectively, the

6

"Tenant Changes") that do not cost in excess of $100,000.00, without Landlord's prior written consent (each, a "Permitted Change", and collectively, the "Permitted Changes"). *Tenant must obtain Landlord's prior written consent to any Tenant's Change that shall cost in excess of $100,000*, which consent Landlord agrees not to unreasonably withhold, condition, or delay. As part of its approval process, Landlord may require that Tenant submit plans and specifications to Landlord, for Landlord's approval or disapproval, which approval shall not be unreasonably withheld, conditioned or delayed." (emphasis added).

30. The work performed by Defendant on the floors/Floor Joints was an alteration, improvement or addition to the Premises in excess of $100,000.

31. Pursuant to the terms of the Lease, Defendant had an obligation to obtain Plaintiffs' approval prior to performing the work on the floors/Floor Joints at the Premises.

32. Defendant failed to obtain the Plaintiffs' approval prior to performing work on the floors/Floor Joints at the Premises and thus the work was not a Permitted Change under the Lease.

33. Plaintiffs would not have permitted Defendant to perform the work described in the TRW Proposal if the TRW Proposal had been presented to Plaintiffs. Nor would Plaintiffs have permitted the work actually performed by Defendant on the floors/Floors Joints at the Premises.

34. In addition to the indemnification provision in Section 11 of the Lease, Section 18(c) of the Lease provides "Tenant agrees to indemnify, hold the Landlord Indemnified Parties' harmless from, and defend against all liens, claims and liabilities or every kind, nature and description that arises out of or in any way is connected with any Tenant's Changes."

7

35. Section 18(a) of the Lease also provides "[e]xcept as otherwise provided herein and in Section 12, all Tenant's Changes and repairs and all other property attached to or installed on the Premises by or on behalf of Tenant shall immediately upon completion or installation thereof be and become part of the Premises and the property of Landlord without payment therefor by Landlord and shall be surrendered to Landlord upon the expiration or earlier termination of this Lease."

36. The work performed by Defendant on the floors/Floor Joints has caused significant and immediate damage to the Plaintiffs and the Premises.

37. Defendant has an obligation to indemnify Plaintiffs for the unapproved and improper work it performed at the Premises. The work performed, upon completion, became part of the Premises and the property of the Plaintiffs.

38. Pursuant to the terms of the Lease, Plaintiffs have the right to sell the Premises at any time during the term of the Lease.

39. The damage to the Premises and to Plaintiffs is current and ongoing.

40. Representatives of Defendant have raised, themselves, significant concerns regarding the work performed on the floors/Floor Joints at the Premises and the structural integrity of the floors.

41. While Defendant has performed and proposed some repair work on the floors/Floor Joints at the Premises to mitigate its negligent/willful misconduct and breach of the Lease, the appropriate remedy is to remove and replace the floors.

42. The current estimated cost to remove and replace the floors is $9,000,000.00.

43. In addition, Defendant's negligent/willful misconduct and breach of the Lease has caused the value of the Premises to be diminished. The current estimated diminution in value of the Premises as a result of Defendant's negligent/willful misconduct is $24,000,000.00.

### COUNT I
(Breach of Contract and Indemnification)

44. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

45. The parties entered into the Lease Agreement with an effective date of July 1, 2022.

46. The Lease requires Defendant to obtain prior approval from Plaintiffs to perform alterations, improvements or additions to the Premises in excess of $100,000.

47. Defendant failed to obtain prior approval from Plaintiffs for work performed on the floors/Floor Joints at the Premises, which work exceeded $100,000.

48. In addition to failing to obtain prior approval, the work performed at the Premises by Defendant on the floors/Floor Joints has caused significant damage to the Plaintiffs and to the Premises.

49. As a direct and proximate result of the unapproved and improper work performed by Defendant at the Premises on the floors/Floor Joints, the value of the property has been diminished by not less than $24,000,000.00.

50. Further, as a direct and proximate result of the unapproved and improper work performed by/on behalf of Defendant at the Premises on the floors/Floor Joints, the floors at Premises must be removed and replaced. The current estimated cost to remove and replace the floors at the Premises is not less than $9,000,000.00.

51.     Pursuant to the Lease, Defendant agreed to indemnify Plaintiffs for any "losses suffered by the Landlord arising from: (i) Tenant's particular use or particular manner of use of the Premises (as distinguished from use of the Premises for the Proposed Use); and (ii) any act, negligence or willful misconduct of Tenant or Tenant's Affiliates, whether occurring on the Premises or on any appurtenant areas during the Term." Defendant also agreed to indemnify Plaintiffs "against all liens, claims and liabilities of every kind, nature and description that arises out of or in any way is connected with any Tenant's Changes."

52.     The work performed at the Premises by Defendant on the floors/Floor Joints constitutes (i) a particular use or particular manner of use of the Premises (and was not a Proposed Use as that term is defined in the Lease) and/or (ii) an act of negligent or willful misconduct. In addition, the work performed at the Premises by Defendant on the floors/Floor Joints constitutes and unapproved Tenant Change.

53.     Defendant has materially breached the terms of the Lease, which breach has directly caused Plaintiffs direct and substantial damages.

54.     As a result of Defendant's breach of its obligations and duties under the Lease, Plaintiffs have suffered, and will continue to suffer, and are entitled to damages of not less than $24,000,000.00, as well as attorneys' fees and other expenses pursuant to Sections 11 and 18 of the Lease Agreement.

55.     All conditions precedent to Plaintiffs' right to file and recover damages as a result of Defendant's material breaches of contract have been satisfied, excused, and/or fulfilled.

**COUNT II**
(Declaratory Judgment)

56.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

10

57.     Pursuant to 28 U.S.C. § 2201 *et seq.*, the Court has the authority to declare the rights under the terms of the Lease.

58.     While Plaintiffs and Defendant agree that Defendant is responsible for the damage caused to the Premises, Plaintiffs and Defendant disagree regarding (i) the appropriate scope of repair/replacement and (ii) when the damage to the floors needs to be corrected.

59.     Because Plaintiffs and Defendant do not agree, a justiciable controversy exists.

60.     As a consequence of the foregoing, Plaintiffs asks that this Court enter a declaratory judgment stating that Defendant has an obligation under the Lease to (i) remove and replace the floors at the Premises to return them to their original condition and (ii) that such removal and replacement of the floors must be promptly accomplished by Defendant. In the interim, Plaintiffs ask to be relieved of any maintenance obligations existing under the Lease that may arise as a result of the work performed by Defendant on the floors/Floor Joints.

## Prayer for Relief

Based on the foregoing factual allegations and applicable legal theories, whether stated herein above or determined at a later time based on the evidence presented at trial, Plaintiffs, Summit Investments II and Summit Investments V, respectfully request judgment in their favor against Defendant, Sam's East, Inc., on its claims for relief and providing the following:

a.     Damages in excess of $24,000,000.00, as well as attorneys' fees and costs incurred by Plaintiffs;

b.     Declaratory judgment that Defendant must (i) remove and replace the floors at the Premises and return them to their original condition, (ii) repair any additional damages that have been caused to the Premises as a result of the work performed on the floors by Defendant;

11

      c.      Declaratory judgment that Defendant must protect the Premises when performing any work on the Premises to ensure no further damage is done by Defendant to the Premises; and

      d.      Declaratory judgment that Defendant's removal and replacement of the floors at the Premises must be promptly accomplished by Defendant.

Date:   July 28, 2023                                     Respectfully submitted,

                                                                            By:   */s/ Courtney Moates Paulk*
                                                                            Courtney M. Paulk (VSB No. 45523)
                                                                            Nathaniel L. Story (VSB No. 77364)
                                                                            Spencer S. Allen (VSB No. 94642)
                                                                            HIRSCHLER FLEISCHER, P.C.
                                                                            2100 East Cary Street
                                                                            Richmond, VA  23223-7078
                                                                            Telephone: (804) 771-9500
                                                                            Facsimile: (804) 644-0957
                                                                            Email:   cpaulk@hirschlerlaw.com
                                                                                        nstory@hirschlerlaw.com
                                                                                        sallen@hirschlerlaw.com

                                                          *Counsel for Plaintiffs Summit Investments II and Summit Investments V*