IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUMMIT INVESTMENTS II, *et al.*,<br>　　Plaintiffs,<br><br>　　v.<br><br>SAM'S EAST, INC.,<br>　　Defendant and Third-Party Plaintiff,<br><br>　　v.<br><br>TRW ENTERPRISES, INC.<br>　　Third-Party Defendant. | Civil Action No. 3:23CV479 (RCY) |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Sam's East, Inc.'s ("Sam's East") Motion for Leave to File an Amended Answer and Counterclaims ("Motion for Leave," ECF No. 54). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Sam's East's Motion for Leave (ECF No. 54).

**I. RELEVANT BACKGROUND**

The Court previously outlined much of the pertinent factual and procedural background in its Memorandum Opinion concerning Sam's East's Motion to Dismiss in this matter. *See Summit Invs. II v. Sam's E., Inc.*, 2024 WL 1223541 (E.D. Va. Mar. 21, 2024), ECF No. 48. For present purposes, the Court incorporates that factual recitation, as supplemented by the following details.

On March 22, 2024, Sam's East served a Default Notice on Summit Investments II and Summit Investments V (together, "Summit") related to the condition of the concrete floor at issue

in this lawsuit. *See* Mem. Opp'n Mot. Leave Ex. 1 ("Default Notice"), ECF No. 61-1; Reply Supp. Mot. Leave ("Reply") 1, ECF No. 62. Among other things, the Default Notice relayed Sam's East's position that the concrete floor damage was "attributable to design defects as a result of [Summit's] substantial deviations from well-known, accepted industry standards." Default Notice 1. These deviations, per Sam's East, included (1) Summit's decision to "change from a welded wire reinforcement to a delegated slab design with use of low dosages of steel fibers or 'micro rebar,'" (2) Summit's "failure to provide other means of positive shear load transfer in the sawcut contraction joints," (3) "the slab not being appropriately designed to utilize aggregate interlock as the share transfer mechanism, causing failure of the aggregate interlock and the slab panels to rock or what is also known as 'rocking floor panels,'" and (4) Summit's use of "incorrect assumptions for the slab's concrete shrinkage, vapor barrier coefficient of friction, joint efficiency and joint openings." Default Notice 1–2. Sam's East concluded the Default Notice by demanding that Summit "promptly . . . cure the design defects present in the floor slabs and slab panel joints" pursuant to their purported obligations under the parties' Lease Agreement. *Id.* at 2.[1]

On March 26, 2024, four days after service of the Default Notice, the parties convened for a "mediation session" in front of the Honorable Summer L. Speight. Reply 1. The parties were ultimately unable to resolve their differences at this session. They did, however, enter a limited Memorandum of Understanding ("MOU") concerning certain outstanding issues. The relevant portion of the MOU is excerpted below:

> Regarding the issues in the Default Notice, the parties agree to meet and confer in a good faith effort to discuss whether a mutually agreeable stipulation may obviate the need for Sam's [East] to pursue a counterclaim related solely to Sam's [East's] claim of rocking floors in the Default Notice. If the parties cannot reach a mutually agreeable stipulation by April 9, 2024, Summit agrees to consent to Sam's [East's] motion for leave to amend its answer and/or assert a counterclaim, related solely to

---

[1] It is also worth noting that, while the Default Notice was served on March 22, 2024, Sam's East supposedly "apprised Summit of the need to file the counterclaims in February." Mot. Leave 2.

> Sam's claim of rocking floors in the Default Notice, provided that such motion does not seek to extend the trial date. In any event, Sam's [East] would wait until after May 1, 2024 to file any such amendment or counterclaim.

Reply Ex. A ("MOU") 1–2, ECF No. 62-1.

The parties were apparently unable to reach a "mutually agreeable stipulation" that would "obviate the need" for Sam's East to file a counterclaim. MOU 2. Consequently, Sam's East filed the instant Motion for Leave and Memorandum in Support thereof on May 22, 2024. ECF Nos. 54 and 55.[2] Uncertain as to whether Summit presently consented to such motion, the Court ordered Summit to file a response to Sam's East's Motion for Leave by May 30, 2024. Order, ECF No. 56. Summit complied, noting its opposition to Sam's East's Motion for Leave. *See generally* Mem. Opp'n Mot. Leave ("Mem. Opp'n"), ECF No. 61.[3] Sam's East then filed its Reply in Support of its Motion for Leave on June 5, 2024. ECF No. 62. The Motion for Leave is thus ripe for review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In accord with this guidance, the Fourth Circuit's policy is to "liberally allow amendment." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)); *see Moore v. Gregory*, 2024 WL 555887, at *4 (E.D. Va. Feb. 12, 2024). Leave to amend a pleading should

---

[2] This filing also included Sam's Proposed Amended Answer and Counterclaims (ECF No. 54-1) and the exhibits thereto (ECF Nos. 54-2, 54-3, 54-4, 54-5, and 54-6).

[3] To be clear, Summit "does not object to Sam's [East's] filing of an Amended Answer." Mem. Opp'n 1 n.1. That is because Summit concedes that "[a]mending an answer to add relevant affirmative defenses is an ordinary and expected procedure in federal litigation and Summit does not assert that it will suffer any significant prejudice from the additional affirmative defenses." *Id.* Summit does, however, object to Sam's East's Proposed Counterclaim. *See id.* at 1–4.

therefore only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

### III. DISCUSSION

Sam's East moves to amend its Complaint pursuant to both Federal Rule of Civil Procedure 15(a)(2) and Summit's consent. *See* Mem. Supp. 4–5; Reply 3–18. Summit's position is that the Court should deny Sam's East's Motion for Leave because the proposed counterclaims (a) exceed the scope of what Summit agreed to in the MOU, *see* Mem. Opp'n 5–6, and (b) are "extraordinarily late," would be "severely prejudicial," and are futile, s*ee* Mem. Opp'n 6–22. The Court disagrees and will grant the Motion for Leave.

**A. Consent**

The Court begins with the parties' consent-based arguments. Sam's East contends that Summit, by way of the MOU, consented to the counterclaim Sam's East now seeks to raise. Mem. Supp. 5; Reply 3–7. Summit retorts that the MOU has no effect because Sam's East's proposed counterclaim "is not 'related solely to Sam's [East's] claim of rocking floors.'" Mem. Opp'n 5. After a thorough review of the Default Notice, MOU, and Proposed Counterclaim, the Court finds that Summit largely consented to the Proposed Counterclaim.

On March 26, 2024, the parties signed an MOU affirming that "they . . . reached an agreement on certain issues." MOU 1. Therein, Summit and Sam's East "agree[d] to meet and confer in a good faith effort to discuss whether a mutually agreeable stipulation" would "obviate the need for Sam's [East] to pursue a counterclaim related solely to Sam's [East's] claim of rocking floors in the Default Notice." *Id.* at 1–2. In the event that the parties failed to reach such an agreement by April 9, 2024, "Summit agree[d] to consent to Sam's [East's] motion for leave to

4

amend its answer and/or assert a counterclaim, related solely to Sam's [East's] claim of rocking floors in the Default Notice, provided that such motion does not seek to extend the trial date." *Id.* at 2. The parties further agreed that Sam's East would "wait until after May 1, 2024 to file any such amendment or counterclaim." *Id.* In other words, Summit's consent was conditioned upon (1) a meet and confer taking place before the filing of any amendment/counterclaims, (2) any counterclaim "relat[ing] solely" to Sam's East's "claim of rocking floors in the Default Notice," (3) Sam's East waiting until after May 1, 2024 to file "any such amendment or counterclaim," and lastly, (4) that any motion to file such amendments or counterclaims "does not seek to extend the trial date." *Id.* The parties do not appear to dispute that the first, third, and fourth conditions are met.[4] *See generally* Mem. Opp'n; Reply. The parties likewise do not appear to dispute that Sam's East has properly filed an Amended Answer. *See* Mem. Opp'n 1 n.1. The primary issue before the Court, then, is whether Sam's East's proposed counterclaim "relates solely" to its "claim of rocking floors in the Default Notice." *Id.* A side-by-side review of the Default Notice and Proposed Counterclaim reveals that the answer to this question is, largely, yes.

    The Default Notice reads as follows:

> [Sam's East] has conducted an investigation of the Floor Slab Damage and has determined that [it] was, in fact, attributable to design defects as a result of [Summit's] substantial deviation from well-known, accepted industry standards, including among other things, (a) [Summit's] election to change from a welded wire reinforcement to a delegated slab design with use of low dosages of steel fibers or "micro rebar"; (b) failure to provide other means of positive shear load transfer in the sawcut construction joints; (c) the slab not being appropriately designed to utilize aggregate interlock as the share transfer mechanism, causing failure of the aggregate interlock and the slab panels to rock or what is also known as "rocking floor panels"; and (d) [Summit's] use of incorrect assumptions for the slab's concrete shrinkage, vapor barrier coefficient of friction, joint efficiency and joint openings.

---

[4] While Summit does argue that "a 20-day delay in filing a counterclaim is . . . unacceptable under the circumstances given the fact that Sam's [East] knew its counterclaim would likely result in additional discovery," Summit cannot seriously contend that the MOU did not permit—and to some extent, require—the timing of Sam's East's Motion for Leave. *See* MOU 1 (requiring that Sam's East wait until after May 1, 2024, to file any counterclaim).

Default Notice 1–2. Paragraphs 40–51 of Sam's East's Proposed Counterclaim go on to provide further information elucidating how and why these alleged design defects all "relate[] solely to Sam's [East's] claim of rocking floor panels." MOU 2; *see* Mot. Leave Ex. A ("Proposed Counterclaim") 17–18. With this information in mind, the Court turns to consider whether Sam's East's newly proposed counts "relate[] solely" to the "rocking floor" portion of the Default Notice. MOU 2. If they do, Summit consented to them by way of the MOU. If they do not, a more standard Rule 15(a)(2) inquiry is in order.

Count I appears to largely comply with the strictures of the MOU. Specifically, Paragraphs 67–75 and 80–81 all relate solely to the claim of rocking floor panels in the MOU. *See* Proposed Counterclaim 20–21 (mirroring the rocking floor claim in the Default Notice). Paragraphs 76–79, on the other hand, sweep a bit too broadly. Rather than relating solely to the rocking floor panels, these paragraphs concern Summit's alleged use of micro rebar in the building column foundations. *See* Proposed Counterclaim 21. While this issue was mentioned in the Default Notice, *see* Default Notice 2, it is not within the scope of what the parties explicitly agreed to in the MOU. *See* MOU 1–2. Summit may therefore be held to its consent as to Paragraphs 67–75 and 80–81 of Count I, but not as to Paragraphs 76–79.

For similar reasons, Summit may be held to its consent for *some* of Count II. Count II is a declaratory judgment count outlining that "Summit does not agree with Sam's [East] that, among other things, the panels in the concrete slab are rocking and require Summit to repair them." Proposed Counterclaim 22. Sam's East thus asks the Court to "enter a declaratory judgment confirming that Summit is in breach of the lease and must promptly repair deficiencies caused by the use of Helix micro rebar in the warehouse." *Id.* Again, Sam's East's requests go slightly beyond the scope of the MOU. Summit agreed only to a counterclaim "relat[ing] solely" to the

6

rocking floor panels. MOU 2. While Sam's East maintains that the use of micro rebar contributed to the rocking floor panels, its request that the Court order Summit to "repair deficiencies caused by the use of . . . micro rebar" more generally is simply too broad. That is because Sam's East also takes issue with Summit's use of micro rebar in the building columns. Proposed Counterclaim 21. Importantly, Summit did not consent to claims related to *that* use of micro rebar (i.e., in the building columns). *See* MOU 1–2. Accordingly, to the extent that Count II can be construed to relate *solely* to Sam's East claim of rocking floor panels, Summit will be held to its consent. Beyond that, Sam's East will need to justify its request for leave to amend under the standard Rule 15 inquiry.

In sum, Sam's East's Proposed Counterclaim largely complies with the parties' March 26 MOU. All portions of the Proposed Counterclaim that so comply are therefore permissible pursuant to the parties' mutual consent. To the extent the Proposed Counterclaim goes beyond what the parties agreed to, the Court will consider the parties' Rule 15(a)(2) arguments to determine whether leave to amend should nevertheless be granted. Fed. R. Civ. P. 15(a)(2).

**B. Rule 15(a)(2)**

Consent notwithstanding, Summit urges the Court to deny Sam's East's request for "leave to amend its responsive pleadings by adding counterclaims at this late stage of litigation." Mem. Opp'n 1. In support of this position, Summit argues that Sam's East request for such leave is "extraordinarily late," would be "severely prejudicial," and is futile. *See* Mem. Opp'n 5–22. The Court disagrees and will grant Sam's East's request in its entirety.

1. Delay

The Court begins with the first of Summit's arguments—that Sam's East's counterclaim is "extraordinarily late." Mem. Opp'n 6. While Summit is perhaps correct that Sam's East *could*

have brought this counterclaim earlier, glaringly absent from Summit's briefing is any contention that Sam's East's delay is the result of *bad faith*. *See* Mem. Opp'n 6–22. And in the Fourth Circuit, "delay alone is not [a] sufficient reason to deny leave to amend." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Instead, "[t]he delay must be accompanied by prejudice, bad faith, or futility." *Id.* The timing of Sam's East's counterclaim, then, is more appropriately considered within the context of Summit's remaining arguments for denial—prejudice and futility.[5]

### 2. Prejudice

Moving on, Summit argues that it would suffer significant prejudice if Sam's East were permitted to assert its Proposed Counterclaim at this stage of the litigation. The Court disagrees.

At the outset, the Court acknowledges that prejudice is "[p]erhaps the most important factor" for a court considering whether to grant leave to amend. 6 Charles A. Right & Arthur R. Miller, Fed. Prac. & Proc. § 1487 (3d ed. 2024) (hereinafter, "Wright & Miller"). Despite the importance of this factor, there exist no bright line rules for courts to apply in determining whether a proposed amendment would prejudice the opposing party sufficient to justify denial of leave to amend. *See id.* Caselaw does, however, provide some guidance. To that end, if an amendment would "substantially change[] the theory on which the case has been proceeding *and* is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *Id.* (collecting cases) (emphasis added); *see Johnson*, 785 F.2d at

---

[5] In any event, the Court is not persuaded that Sam's East could or should have brought this claim earlier. Due to the highly technical nature of the claims at issue, it does not seem unreasonable for Sam's East to have waited until after expert intervention to determine that it wished to pursue a counterclaim. *Cf. Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("Liberty moved to amend it answer more than four years after the complaint was filed. While Liberty's reasons for the delay are not clear, . . . [its] tardiness may well have been due to its uncertainty as to what issue to focus on rather than bad faith."). Moreover, it would be unreasonable to infer bad faith from Sam's East's compliance with the MOU's open-ended command that Sam's East wait after May 1, 2024 to file a counterclaim.

510 (suggesting that an amendment on the eve of trial would not have been prejudicial because it "would have been substantially similar to the merits" of the other claims already raised); *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir. 1987) (finding no prejudice where (1) any delay in bringing the new claim was merely a symptom of the already "desultory pace" of the case, and (2) the facts on which the new count that the plaintiffs sought to add were already well known to the defendants).

In view of this guidance—and against the backdrop that leave to amend should be freely granted—the Court finds that the circumstances here simply do not justify denial of Sam's East's Motion for Leave. For starters, the Court is not persuaded that Sam's East's proposed amendments "substantially change" the scope of this litigation or require additional discovery beyond what has already taken place. *See* 6 Wright & Miller § 1487. As Sam's East notes, the facts alleged in the Proposed Counterclaim "are relevant to liability and damages under Summit's claim, and thus already will be part of the trial." Reply 9. Put differently, the *substance* of the Proposed Counterclaim was already going to a part of this litigation, albeit raised as defenses by Sam's East. That the Proposed Counterclaim will now allow Sam's East to rely on these facts not just as a shield but also a sword does not prejudice Summit. *See Island Creek Coal Co.*, 832 F.2d at 280; 6 Wright & Miller § 1487 ("[C]ourts have allowed amendments when it was established that doing so would not unduly increase discovery . . . and when the opponent could not claim surprise, but effectively should have recognized that the . . . matter included in the amendment would be at issue." (collecting cases)); *see also Johnson*, 785 F.2d at 510.

The Court is unmoved by Summit's arguments to the contrary. For instance, Summit contends that its "notice of the *potential* for a counterclaim does not alleviate the prejudice it will suffer if Sam's East is permitted to file its Proposed Counterclaim." Mem. Opp'n 14. This would

be a stronger argument if all that Summit had really was just "notice of the *potential* for a counterclaim." *Id.* Such is not the case here. Instead, Summit endorsed an MOU and actively consented to the filing of a counterclaim. *See* MOU 1–2. To be fair, Sam's East's Proposed Counterclaim does slightly exceed the scope of what Summit agreed to in the MOU. *See* Proposed Counterclaim 21–22. But the Court is not persuaded that such a deviation transforms an agreed-upon counterclaim into a prejudicial, earth-shattering change to this litigation.[6]

While Summit raises a few other prejudice-adjacent arguments, *see* Mem. Opp'n 13–17, they all face the same primary pitfalls: (1) that Sam's East's Proposed Counterclaim does not substantially change the nature of this litigation, and (2) that ample time remains for Summit to course correct and account for Sam's East's counterclaims.[7] Under such circumstances, the Court finds that the Proposed Counterclaim does not prejudice Summit to such an extent as to require denial of Sam's East's Motion for Leave. *See* 6 Wright & Miller § 1487 (collecting cases); *Johnson*, 785 F.2d at 510 (noting that prejudice results where a proposed counterclaim would "require the gathering and analysis of facts not already considered by the opposing party" *and* is offered "shortly before or during trial"); *cf. Island Creek Coal Co.*, 832 F.2d at 281 (holding that the district court abused their discretion when denying leave to amend where, among other things, "the facts on which the count which the [party] sought to add . . . [were already] well known" to the other party).

---

[6] Further solidifying this conclusion is the fact that the portions of the Proposed Counterclaim that arguably exceed the scope of Summit's consent appear to require less discovery and preparation than the portions of the Proposed Counterclaim that Summit *did* consent to. *See, e.g.,* Proposed Counterclaim 21 (alleging that the use of micro rebar in the building column foundations constitutes a breach of the lease). Rather than requiring extensive expert testimony on highly technical issues (like the floor slab-related allegations), these allegations are more straightforward and primarily concern whether Summit abided by the terms of the lease.

[7] To further account for this concern, the Court will be granting a brief extension of the dispositive motion deadline, as discussed *infra*.

3. Futility

Summit lastly argues that several of Sam's East's counterclaim are futile. Mem. Opp'n 17. Specifically, Summit contends that Sam's East (1) fails to state a claim relating to Summit's purported failure to fill the expansion control joints and (2) fails to state a claim relating to the Helix micro rebar in the column foundations. At this juncture, the Court cannot agree.

District courts may deny leave to amend "if the proposed amended [pleading] fails" to withstand Rule 12(b)(6) scrutiny. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *In re Trial Cap. Corp. Sec. Litig.*, 988 F.3d at 750 (citing *Katyle*, 637 F.3d at 471). When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true all well-pleaded allegations and view[s] the [pleading] in the light most favorable to [the claimant]." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All reasonable inferences that can be drawn from the pleading are drawn in the claimant's favor. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Federal Rule of Civil Procedure 8 only requires that a pleading set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

11

As noted above, Summit argues that two of Sam's East's claims are futile: their claim regarding Summit's alleged failure to fill the expansion control joints, and their claim regarding Summit's use of Helix micro rebar in the column foundations. *See* Mem. Opp'n 18–22. Beginning with the former claim, Summit essentially contends that Sam's East has waived the right to raise this issue. *See* Mem. Opp'n 18–20. In response, Sam's East first notes that "[w]aiver is . . . an affirmative defense . . . which is typically inappropriate to consider in the context of Rule 12(b)(6)-type challenge[s]." Reply 15. Sam's East further argues that, regardless, the Lease Agreement "has a strict 'no waiver' clause." Reply 16. Viewing all facts in the light most favorable to Sam's East, the Court declines to find that Sam's East control joint-related claim is futile due to waiver. As a preliminary matter, Sam's East is correct that motions to dismiss under Rule 12(b)(6)—the lens through which the Court must analyze Summit's futility argument—generally "cannot reach the merits of an affirmative defense" such as waiver. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Court therefore rejects Summit's invitation to affirmatively rule upon the waiver issue at this stage. And in any event, Sam's East appears to have a colorable argument that other contractual provisions may ultimately preclude a finding of waiver. Under these circumstances, the Court abstains from taking the drastic step of finding that Sam's East's claim related to the expansion joints is futile.

The Court turns now to Summit's second futility argument: that the Proposed Counterclaim fails to state a claim that Summit breached its representation that the property "complied with [all] 'Governmental Requirements.'" Mem. Opp'n 20. Summit raises three main points in support of this argument. First, Summit contends that the Lease Agreement's definition of "Governmental Requirements" applies "solely to Sam's [East's] 'particular use,' of the premises," not Summit's alleged allowance of "any code violation whatsoever to exist." Mem.

Opp'n 21. Because Sam's East's "particular use" of the property has not been rendered unlawful by way of Summit's purported allowance of a code violation to exist, the argument goes, Summit has not breached the lease. *Id.* However, as Sam's East points out, this argument ignores the other provisions of the Lease Agreement. In those provisions, Summit represented both that that property complied with all "Governmental Requirements," and that Summit would "at all times be responsible for causing the [property] to comply" with such requirements. Reply 16–17. In other words, Summit's alleged failure to "caus[e] the [property] to comply" with "Governmental Requirements" may constitute a breach of its representations *regardless* of whether such failure renders Sam's East's particular use of the property unlawful. *Id.* Summit's argument on this point therefore fails to establish that Sam's East's claim is futile.

Next, Summit argues that the relevant contractual provisions limit Sam's East's potential remedies to indemnity in the event of Summit's breach. Mem. Opp'n 21–22. Because Sam's East has not incurred an indemnifiable loss relating to Summit's failure to comply with "Governmental Requirements," Summit contends that Sam's East fails to state a claim relative to this purported breach. *See id.* What Summit fails to mention, though, is that the "Governmental Requirements" provision "says nothing about that indemnity obligation being exclusive." Reply 17. And in fact, the "Events of Default" provision within the Lease Agreement provides that if Summit defaults in the performance of *any* representation, Sam's East shall have "all remedies available at law or in equity." *Id.*; Compl. Ex. A ("Lease Agreement") 51, ECF No. 2-1. Such remedies "include terminating the Lease [Agreement] or curing the breach and charging Summit for cost to cure." *Id.*; *see, e.g, Nichols Constr. Corp. v. Va. Machine Tool Co.*, 276 Va. 81, 89–90 (2008) (recognizing that the cost of correcting a construction defect is one basis for measuring breach of contract damages). These remedies would be presently available if, as Sam's East alleges, Summit

13

has breached its obligations under the "Governmental Requirements" provision. Accordingly, Summit's remedy-based argument for futility fails.

Finally, Summit raises another waiver argument: "To the extent that Sam's [East] has any claim related to the use of Helix in the building column foundations, it has waived that claim as a matter of law pursuant to the plain and unambiguous terms of the Lease." Mem. Opp'n 22. For the reasons discussed above, the Court is skeptical of waiver arguments at this stage. And regardless, the Lease Agreement's "no waiver provision" again calls into question whether Sam's East's actions constitute waiver under these circumstances. *See* Reply 16–17; Lease Agreement 62. The Court therefore declines to find that Sam's East's Proposed Counterclaim is futile on the basis of waiver.

**C. Summary**

By way of the MOU, Summit has largely consented to Sam's East's Proposed Counterclaim. To the extent that the Proposed Counterclaim introduces claims beyond the scope of Summit's consent, the Court nevertheless grants Sam's East leave to raise such claims pursuant to Rule 15(a)(2). Simply put, there is no indication that Sam's East acted in bad faith in waiting to file its Proposed Counterclaim, Summit will suffer no significant prejudice as a result of the Proposed Counterclaim, and the Proposed Counterclaim does not appear to be futile. Sam's East may therefore file its Amended Answer and Counterclaims (and any attached exhibits) as proposed.

That said, the Court is cognizant that this ruling may impact the parties' summary judgment briefing. Accordingly, the Court grants the parties a brief extension of the dispositive motion deadline, to allow time to build arguments related to the new Counterclaims, as needed. The parties shall file all dispositive motions on or by July 1, 2024.

## IV. CONCLUSION

For the foregoing reasons, Sam's East's Motion for Leave (ECF No. 54) will be granted, as outlined herein.[8]

>                                              /s/ RCY
>                          _____
>                          Roderick C. Young
>                          United States District Judge

Richmond, Virginia
Date: June 18, 2024

---

[8] This Memorandum Opinion is entered in accordance with the Order previously entered by the Court on June 17, 2024. *See* Order, ECF No. 65.