IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUMMIT INVESTMENTS II, *et al.*,  )<br>  Plaintiffs,       )<br>              )<br>   v.          )<br>              )<br>SAM'S EAST, INC.,      )<br>  Defendant.        )<br>              ) | Civil Action No. 3:23CV479 (RCY) |

**MEMORANDUM OPINION**

This case stems from a lease dispute arising from repairs made at a warehouse leased by Defendant Sam's East, Inc. ("Defendant" or "Sam's East") from Plaintiffs Summit Investments II and Summit Investments V (collectively, "Plaintiffs" or "Summit"). The matter is presently before the Court on Plaintiffs' Partial Motion to Dismiss Sam's East, Inc.'s Counterclaim ("Partial Motion to Dismiss"), ECF No. 82. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Partial Motion to Dismiss.

**I. BACKGROUND**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the [non-movant]'s well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to [the non-moving party]." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require the Court to accept any unreasonable inferences or legal conclusions. *Id.* In the context of a motion to dismiss a counterclaim, a court may consider any documents attached to the counterclaim, as well as any other authentic documents that are integral to the counterclaim. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *Small Bus.*

*Fin. Sols., LLC v. Cavalry, LLC*, 2023 WL 284449, at *5 n.6 (D. Md. Jan. 18, 2023) (citing *Kisano Trade & Invest Ltd. v. Winding Gulf Coal Sales, LLC*, 2010 WL 1904669, at *2 (S.D.W. Va. May 10, 2010); *Teras v. Wilde*, 2015 WL 7008374, at *4 n.4 (D. Md. Nov. 12, 2015)). Accordingly, the Court takes the factual allegations in Sam's East's Counterclaim as true, and properly considers the other documents referenced therein, including Summit's Complaint and the attachments thereto.

**A. Summit's Complaint**

This action first came before the Court by virtue of Summit's Complaint, filed on July 28, 2023. Compl., ECF No. 1. Therein, Summit asserts that it is the owner of a 650,250 square-foot industrial warehouse located in Prince George, Virginia ("the Premises"). *Id.* ¶¶ 3, 5; Compl. Ex. A ("Lease Agreement" or "Lease"), ECF No. 2-1.[1] On July 1, 2022, Summit agreed to lease the Premises to Sam's East. Compl. ¶ 5.

Sam's East took possession of the Premises the same month. *Id.* ¶ 8. Shortly thereafter, Sam's East engaged TRW Enterprises, Inc. ("TRW") to fill the expansion joints between the concrete slabs that comprised the floors of the Premises. *Id.* ¶ 9. TRW offered to complete the project for $630,000, during which it would "seal" the joints with a "2-part epoxy by sika that's actually harder than concrete." Compl. Ex. B ("Proposal") 2, ECF No. 2-2; Compl. ¶ 9. Sam's East accepted TRW's offer, and, in the fall of 2022, TRW performed the proposed work on behalf of Sam's East using the "2-part epoxy" material. Compl. ¶ 12. Notably, Summit alleges that Sam's East did not notify Summit of the contract with TRW. *Id.* ¶ 25.

---

[1] There is one amendment to the Lease Agreement dated July 29, 2022; however, the Court refers to the Lease Agreement and said amendment collectively as the "Lease Agreement." Compl. ¶ 5; *see* Lease Agreement 2–6. For the Lease Agreement and all other filings, the Court relies upon the pagination applied by CM/ECF.

2

Following TRW's work, Sam's East representatives noticed that the floors of the Premises had developed cracks around the edges of the joints. *Id.* ¶ 13. Those representatives were unaware that the work had been done on behalf of Sam's East, and emailed Summit asking it to address the issue. Compl. ¶¶ 15–16; Compl. Ex. D 4–5, ECF No. 2-4. Summit's representative responded to the email and asserted that (1) the existing conditions and damage to the floors resulted from work performed by Sam's East and its contractors, and (2) Sam's East needed to promptly address the "alarming" structural conditions it had caused at the Premises. Compl. ¶ 17; Compl. Ex. D 2–3. Following these conversations, Sam's East performed some "mitigati[ng]" repairs; however, Summit alleges that these repairs were insufficient and asserts that the appropriate remedy is to remove and replace the floors. Compl. ¶¶ 18, 41. The parties' conversations regarding the floors devolved into the instant suit.

Notably, the Lease Agreement required Sam's East to "obtain [Summit]'s prior written consent to any [change] that shall cost in excess of $100,000." Lease Agreement 45; Compl. ¶¶ 44–50. Citing this requirement Summit asserts, in the Complaint, one count of Breach of Contract against Sam's East, arguing that Sam's East's failure to obtain permission for TRW's work constituted a breach of the Lease Agreement and resulted in significant damage to the floors of the Premises.[2] Compl. ¶¶ 44–50.

**B. Sam's East Counterclaim**

After obtaining leave from the Court, *see* Order, ECF No. 65, Sam's East filed an Amended Answer, Defenses, and Counterclaim ("Counterclaim") on June 18, 2024. Countercl., ECF No. 66 at 10–24. Sam's East's Counterclaim does not contest the existence of the Lease Agreement, the contracted work by TRW, the fact that TRW performed work on behalf of Sam's East, or the

---

[2] Summit also asks for a declaratory judgment clarifying the parties' obligations under the Lease Agreement. Compl. ¶¶ 56–60.

3

existence of cracking in the floors of the Premises. *Id.* ¶¶ 34–51. Sam's East also admits Summit's allegation that, following TRW's work, Sam's East performed some mitigating repairs to the floor. *Id.* ¶ 37. These repairs were performed by Ace Avant, another contractor hired by Sam's East, to remove the sika epoxy installed by TRW and replace it with another material. *Id.* In total, Ace Avant replaced 70% of the joint filler installed by TRW, which cost Sam's East $786,432.80. *Id.* According to the Counterclaim, Summit objected to Sam's East utilizing Ace Avant to remove TRW's joint filler from the remaining 30% of the joints. *Id.* ¶ 38.

In its Counterclaim, Sam's East alleges that TRW's work is not the cause of the cracks in the floors of the Premises; rather, it asserts that the damage stems from Summit's alleged use of "Helix micro rebar" in the design and construction of the floor. *Id.* ¶¶ 7–11. Unlike industry-standard support mechanisms, Sam's East contends that micro-rebar-supported floor slabs "rock" when they are traversed by forklifts, which causes the slabs to crack. *Id.* ¶¶ 44–50. Sam's East also contends that Summit's use of the micro-rebar violates the Virginia Uniform Statewide Building Code and the International Building Code. *Id.* ¶¶ 52–66.

Based on the above allegations, Sam's East advances its own breach of contract claim against Summit. *Id.* ¶¶ 67–81. In support, Sam's East points the Court to §§ 7(d), 17(a), and 36 of the Lease Agreement, wherein Summit warranted that (1) "each and every floor slab" could accommodate constant traversing by forklifts; (2) Summit would be responsible for filling the joints between the floor slabs with "polyurethane joint filler"; and (3) that the Premises had been constructed in accordance with all relevant regulations. *Id.*; Lease Agreement 25, 41–42, 53. Sam's East alleges that the rocking panels, as well as Summit's failure to fill the joints prior to Sam's East taking possession of the Premises, violates these Lease provisions, and constitutes a breach of the Lease Agreement. Countercl. ¶¶ 70–78.

While the above-cited provisions are critical to Sam's East's Counterclaim, none are relevant to the instant Motion. In fact, Summit's Partial Motion to Dismiss contests only one line of the Counterclaim. *See generally* Summit's Mem. Supp. Mot. Dismiss ("Mem. Supp. Mot. Dismiss"), ECF No. 83. In that contested line, Sam's East states: "Pursuant to § 23 of the [L]ease, Summit's breaches of its representations . . . subject Summit to liability for, among other things, Summit's[3] attorneys' fees incurred as a result of such breaches." Countercl. ¶ 79.

Section 23—the provision of the Lease Agreement invoked by Sam's East in the contested statement—states as follows:

> [Summit] will defend, indemnify and otherwise hold [Sam's East] harmless from any and all claims of any person due to, arising out of or relating to the Premises, including any and all reasonable incurred costs, expenses, and attorneys' fees which [Sam's East] may incur as a result of [Summit]'s breach of its representations made in this Lease. [Summit] will, promptly upon receiving any such notice or learning of any such contemplated or threatened action, give [Sam's East] notice thereof, and, at [Sam's East's] request, defend [Sam's East] with counsel approved by [Sam's East] at [Summit's] sole cost and expense.

*Id.* at 55.

## II. PROCEDURAL HISTORY

Summit filed its initial Complaint in this Court on July 28, 2023. Compl., ECF No. 1. The Complaint largely survived a Motion to Dismiss, with the Court dismissing Summit's indemnity claims against Sam's East but otherwise allowing the Complaint to proceed. Order, ECF No. 49.

On November 17, 2023, Sam's East filed its Answer. Answer, ECF No. 19. On December 1, 2023, Sam's East filed a third-party complaint against TRW. Third Party Compl., ECF No. 21. On May 22, 2024, Sam's East moved for leave to file an Amended Answer and Counterclaims, Mot. Leave File Am. Answer & Countercls., ECF No. 54, which the Court granted on June 17,

---

[3] As described below, *infra* n.4, Sam's East likely intended to assert that "Summit's breaches of its representations . . . subject Summit to liability for, among other things, [Sam's East's] attorneys' fees." Countercl. ¶ 79.

2024.  Order, ECF No. 65.  The next day, on June 18, 2024, Sam's East filed its Counterclaim.  Countercl., ECF No. 66.

On July 8, 2024, Summit filed the instant Partial Motion to Dismiss.  Mot. Dismiss, ECF No. 82; Mem. Supp. Mot. Dismiss, ECF No. 83.  On July 22, 2024, Sam's East filed its Memorandum in Opposition, ECF No. 98, and on July 29, 2024, Summit filed its Reply in Support of Motion to Dismiss ("Reply"), ECF No. 109, rendering the Motion ripe.

### III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect.  *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.* (citations omitted).  The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION

As described above, Summit's Motion to Dismiss takes issue with a single aspect of the Counterclaim: Sam's East's assertion that, "[p]ursuant to § 23 of the [L]ease, Summit's breaches of its representations . . . subject Summit to liability for, among other things, Summit's attorneys' fees incurred as a result of such breaches." *See generally* Mem. Supp. Mot. Dismiss; Countercl. ¶ 79. In support, Summit argues that Sam's East's indemnification claim has not accrued since no "third party" has lodged a "claim" against it. Mem. Supp. Mot. Dismiss 4–5. Thus, Summit asks the Court to dismiss the indemnification portion of Sam's East's Counterclaim. *See generally id.* In response, Sam's East argues that its indemnification claim *has* accrued, because its payments to TRW and Ace Avant constitute third party claims. Mem. Opp'n 1–2. Because the Court finds that § 23 does not extend to litigation costs for disputes between Summit and Sam's East, the Court will grant the Partial Motion to Dismiss without deciding if Sam's East's indemnification claim has accrued.[4]

---

[4] Both parties apparently misread—or, at best, give a claimant-friendly reading to—the relevant portion of the Counterclaim. As noted, at issue is a single sentence: "Pursuant to § 23 of the [L]ease, Summit's breaches of its

7

Summit does not contest that Sam's East properly alleged violations of the Lease Agreement warranties. *See generally* Mem. Supp. Mot. Dismiss. Instead, Summit argues that Sam's East cannot avail itself of § 23 until a third party makes a "claim" against Sam's East, just as this Court previously held with respect to Summit's own request for indemnification. Mem. Supp. Mot. Dismiss 2–3. In response, Sam's East argues that its payments to Ace Avant and TRW constitute third party "claims," triggering the protections of § 23. Mem. Opp'n 2.

The parties lose the forest for the trees. The Counterclaim only invokes § 23 for reimbursement of attorneys' fees and litigation costs—not for reimbursement of Sam's East's contractual payments to Ace Avant or TRW. Thus, the immediate question is whether § 23 purports to cover attorneys' fees related to the instant litigation. The Court finds that it does not.

"The general rules which govern the construction and interpretation of contracts apply in construing an indemnity agreement." *North v. North*, 1998 WL 972068, at *1 (Va. Cir. Ct. Jan. 7, 1998) (citing *Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Auth.*, 121 S.E.2d 499, 503–04 (Va. 1961) (considering an indemnification clause under traditional principles of contract interpretation)).[5] Thus, the Court interprets § 23 of the Lease Agreement "in accordance with the intention of the parties gleaned from the words used in the document." *TravCo. Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012). While the Court may not resolve contractual ambiguities at the

---

representations in the [L]ease subject Summit to liability for . . . *Summit's* attorneys' fees incurred as a result of such breaches." Countercl. ¶ 79 (emphasis added).

Reading the Counterclaim as a whole, it is clear to the Court that Sam's East intended to invoke § 23 of the Lease for reimbursement of *Sam's East's* attorney's fees, rather than ensure Summit is liable for its own litigation costs (which is nonsensical in context). Both parties appear to adopt this intended meaning. *See, e.g.*, Mem. Supp. Mot. Dismiss 5 ("Sam's [East] . . . cannot utilize Section 23 to collect its attorneys' fees"). Thus, based on the parties' shared understanding, and because it does not impact the instant analysis, the Court considers the relevant portion of the Counterclaim as if it stated: "Pursuant to § 23 of the [L]ease, Summit's breaches of its representations in the [L]ease subject Summit to liability for . . . [Sam's East's] attorneys' fees incurred as a result of such breaches." Countercl. ¶ 79.

[5] As noted in its previous opinion, the Court applies Virginia law to the construction of the Lease Agreement. Mem. Op. Mot. Dismiss Compl., *Summit Invs. II v. Sam's East*, 2024 WL 1223541, at *8 (E.D. Va. Mar. 21, 2024), ECF No. 48.

motion to dismiss stage, *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 106 S.E.2d 595, 596 (Va. 1959), the Court also "must not strain to find ambiguities" in a contract. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005). Finally, Virginia courts "will not read contracts to produce absurd results." *Levine v. Emps. Ins. Co. Wausau*, 887 F.3d 623, 632 (4th Cir. 2018). In fact, Virginia law utilizes "common sense" as much as "the dictionary or the arsenal of canons" when interpreting a contract. *Mount Aldie, LLC v. Land. Tr. Va. Inc.*, 796 S.E.2d 549, 555 (Va. 2017).

Virginia law requires the Court to begin its analysis with the text at issue. *See TravCo. Ins. Co.*, 736 S.E.2d at 325. The most critical portion of § 23 provides:

> [Summit] will defend, indemnify and otherwise hold [Sam's] harmless from any and all claims of any person due to, arising out of or relating to the Premises, including any and all reasonable incurred costs, expenses, and attorneys' fees which [Sam's East] may incur as a result of [Summit]'s breach of its representations made in this Lease.

Lease Agreement 55. Immediately thereafter, § 23 states:

> [Summit] will, promptly upon receiving any such notice or learning of any such contemplated or threatened action, give [Sam's East] notice thereof, and, at [Sam's East's] request, defend [Sam's East] with counsel approved by [Sam's East] at [Summit's] sole cost and expense.

*Id.*

Taken by itself, the first-quoted portion of § 23 *could* be read to cover attorneys' fees incurred during litigation between Summit and Sam's East. However, it is a better practice to consider contract provisions in the context of the entire document. *E.g., Atalla v. Abdul-Baki*, 976 F.2d 189, 192–193 (4th Cir. 1992) (applying Virginia law). When § 23 is read in its entirety, it is clear that the parties only intended § 23 to cover costs incurred in *litigation* between Sam's East and third parties—not disputes between Summit and Sam's East. This is made plain by considering the effect of the latter portion of § 23 with respect to the instant litigation. The second-

9

quoted part of § 23 requires Summit to give Sam's East notice of "any . . . contemplated or threatened action . . . and, at [Sam's East's] request, defend [Sam's East]." Lease Agreement 55. If § 23 were to extend to the instant action, Summit would have had to notify Sam's East about Summit's own complaint against it, and then, at Sam's East's request, defendant Sam's East against Summit itself. Of course, such a result is nonsensical, and the Court "will not read [the Lease Agreement] to produce absurd results." *Levine*, 887 F. 3d at 632. Applying "common sense," *Mount Aldie*, 796 S.E.2d at 555, the Court cannot find that § 23 extends to the reimbursement of costs incurred during litigation between the parties.

This conclusion aligns with the Fourth Circuit's observations about the general nature of indemnification provisions. In *Levin v. Septodont, Inc.*, 34 F. App'x 65, 76 (4th Cir. 2002), the Fourth Circuit was faced with a question identical to that which the Court faces today: could an indemnification provision cover attorneys' fees incurred during a dispute between the contracting parties? *Id.* Observing that the indemnification clause at issue was "garden variety," and did not expressly cover disputes between the litigants, the Fourth Circuit determined that the contracting parties did not intend the clause "to cover the expenses of litigation between the contracting parties," since indemnity provisions generally only apply to "attorney fees incurred in defending against lawsuits by third parties." *Id.* (citing *Tony Guiffre Distrib. Co. v. Wash. Metro. Area Transit Auth.*, 740 F.2d 295, 298 (4th Cir. 1984) (applying Virginia law)). Applying the logic of *Levin* here, the Court similarly finds that § 23 is a "garden variety" indemnification provision in that it does not expressly cover costs incurred during litigation between the contracting parties. *See* Lease Agreement 53–55. As such, under *Levin*, there is no reason to apply § 23 beyond the traditional parameters of indemnification provisions, i.e., to reimburse costs incurred during a dispute between a contracting party and an external entity. *Levin*, 34 F. App'x at 76. Accordingly, Sam's East cannot invoke § 23 for litigation costs incurred between it and Summit.

10

Due to both the plain language of § 23 and the broader reality of indemnification provisions articulated by *Levin*, the Court agrees with Summit that Sam's East cannot invoke § 23 for attorneys' fees borne by Sam's East in connection with the claims brought by Summit. The Partial Motion to Dismiss will be granted, and the indemnification portion of Count 1 of the Counterclaim will be severed and dismissed.

## V. CONCLUSION

For the reasons detailed above, Summit's Partial Motion to Dismiss (ECF No. 82) will be granted. An appropriate Order shall issue.

/s/ Roderick C. Young
United States District Judge

Date: March 11, 2025
Richmond, Virginia